KENNEDY, Justice.
Alabama Emergency Room Administrative Services, P.C. (“AERAS”), filed an ac *457 tion in Montgomery County against Dr. James C. Jones, Dr. Phillip K. Hurst, Dr. Mark Choquette, and Dr. James L. Bellone (“the doctors”), alleging tortious interference with contractual relations, misappropriation or usurpation of corporate opportunity, and breach of fiduciary duty. AER-AS is based in Montgomery County; all of the defendants reside in Dothan, Alabama, which is located in Houston County. According to the averments of the complaint, AERAS entered into a contractual arrangement with South Alabama Medical Center in Dothan (“the hospital”), under the terms of which AERAS agreed to provide emergency room services for the hospital. In turn, AERAS contracted with each of the doctors to provide emergency room services for the hospital. The complaint alleged that the doctors terminated their contractual relations with AERAS and then entered into contracts directly with the hospital.
The doctors filed a motion requesting that the trial court transfer the action to Houston County because, they argued, among other reasons, venue was improper in Montgomery County under Ala. Code 1975, § 6-3-2(a)(3). After discovery on the venue issue, the trial court denied the motion to transfer and held that venue was proper in Montgomery County. The doctors petition for a writ of mandamus to order the trial court to transfer the case to Houston County.
Section 6-3-2(a)(3), which the parties deem to be the appropriate venue section concerning this action,[1] provides that if one of the defendants has a permanent residence in Alabama, then an action “may be commenced in the county of such residence or in the county in which the act or omission complained of may have been done or may have occurred.” All the doctors reside in Houston County, so, for venue purposes, the action may properly be brought in Houston County. Venue is proper in Montgomery County only if the “act or omission complained of may have been done or may have occurred” in Montgomery County. § 6-3-2(a)(3). The evidence indicates, and the parties argue on appeal, that the sole “acts or omissions” that might have occurred in Montgomery County related to AERAS’s claim of breach of fiduciary duty based on Dr. Jones’s actions in Montgomery County.
“The burden of proving improper venue is on the party raising the issue, and, on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial court.” Ex parte Ralston, 519 So.2d 488 (Ala.1987), citing Ex parte Finance America Corp., 507 So.2d 458 (Ala.1987).
The evidence indicates that in early 1987 representatives of AERAS were negotiating with Mike Blackmon and Jim Layfield, administrators of the hospital, concerning the hospital’s desire to provide staffing for its emergency room. The hospital intended to replace its emergency room staff with new personnel around July 1, 1987. Lay-field and Blackmon were also negotiating with Dr. Jones to get him to come to Do-than and head a staff of emergency room doctors. At some point, still in early 1987, Dr. Jones signed a contract with the hospital.
As negotiations between the hospital and AERAS progressed, the hospital and AER-AS decided that it would be to their mutual advantage to have Dr. Jones work for AERAS. The reasons for this decision are disputed. In any event, Layfield and Blackmon told Dr. Jones that they wanted him to work for AERAS.
Jones did not agree to work for AERAS at first, in part because he did not know who at AERAS he would be working for. Sometime prior to July 1, 1987, Jones visited Montgomery to talk to Drs. Moorehouse and Tanaka, the principal officers and shareholders of AERAS.
*458 The evidence indicates that later on the same day that Dr. Jones visited Drs. Moorehouse and Tanaka in Montgomery, Dr. Jones drove to Dothan. He said that he still had reservations about working for AERAS, because he was “not sure of how AERAS would contribute to [his] building of a group of Dothan-based emergency room physicians.” Layfield told Dr. Jones that the AERAS arrangement would be “temporary ... until sufficient full-time physicians had been recruited to staff the emergency department.” Blackmon said that the AERAS contracts with both the hospital and with Dr. Jones would contain a 90-day termination clause and would not contain a non-competition clause, thus leaving open all avenues for him to contract later directly with the hospital.
After a few modifications done by mail, Dr. Jones signed the contract with AERAS. The contract contained this provision:
“ANYTHING CONTAINED IN THIS ENTIRE AGREEMENT TO THE CONTRARY NOTWITHSTANDING, this Agreement may be terminated at any time by either Party upon ninety (90) days’ prior written notice.”
The contract between AERAS and the hospital contained this provision:
“A. Either party may terminate this Agreement at any time, with or without cause and without penalty, by giving the other party ninety (90) days’ prior written notice at any time during the term hereof or any extension or renewal thereof.”
Dr. Jones’s contract with AERAS became effective on July 1, 1987. Dr. Hurst’s contract also became effective that day. Drs. Choquette and Bellone signed contracts that became effective July 1, 1988, and January 1, 1989, respectively. The evidence indicates that the hospital recruited all of these doctors. Between July 1, 1987, and September 1988, AERAS and Drs. Jones, Hurst, and Choquette disagreed concerning AERAS’s compensation of the doctors.
In September 1988, Dr. Jones went to Montgomery in Montgomery County to talk to Drs. Tanaka and Moorehouse about AERAS’s relationship with him and Drs. Hurst and Choquette. They negotiated a profit-sharing arrangement between AER-AS, Dr. Jones, and Dr. Hurst. There is no evidence that Dr. Jones told Drs. Tanaka and Moorehouse at that meeting that Lay-field and Blackmon had indicated as early as July 1,1987, that Layfield and Blackmon viewed the association with AERAS as temporary. The evidence indicates that Dr. Jones was in Montgomery on one other occasion, to attend Dr. Moorehouse’s wedding, and there is no evidence that Dr. Jones on that occasion told representatives of AERAS anything concerning whether the doctors’ association with AERAS was temporary.
In the spring of 1989, AERAS and the hospital terminated their agreement concerning emergency room services, effective June 30, 1989. Contemporaneously with the termination of the contract between AERAS and the hospital, the doctors terminated their contracts with AERAS by giving 90 days’ notice, as the contracts required. The doctors then entered into new contracts with the hospital.
AERAS contends that Dr. Jones’s omission to tell it of the “temporary,” “stop-gap” way that the hospital perceived and treated its contracts with AERAS was sufficient evidence of a breach of fiduciary duty to create proper venue in Montgomery County. We disagree. Assuming, for the purposes of discussion only, that AERAS proved that Dr. Jones owed it a fiduciary duty, the evidence still, at best for AERAS, indicates that in order to assure Dr. Jones that his long-term position with the hospital would be unaffected by his signing a contract with AERAS, representatives of the hospital told him that the contractual arrangement between the hospital, the doctors, and AERAS would be temporary. At best, that evidence might imply that Dr. Jones also regarded the contractual arrangement with AERAS as temporary. The hospital’s representatives told Dr. Jones of specific contractual provisions that would allow the arrangement to be temporary; those provisions were clearly stated in the contract that AERAS entered *459 with the doctors and the hospital. Dr. Jones was in Montgomery only two times after he had the discussion with the representatives of the hospital that indicated that the hospital viewed the arrangement as temporary. One occasion was Dr. Moorehouse’s wedding and the other was in September 1988, when he was negotiating with AERAS concerning a profit-sharing arrangement.
The evidence does not sufficiently support AERAS’s argument that Dr. Jones violated a fiduciary duty in Montgomery County and thereby created proper venue in Montgomery County. The ruling of the trial court was clearly erroneous. The petition for a writ of mandamus ordering the trial court to transfer the case to Houston County is due to be granted.
WRIT GRANTED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ„ concur.

. It is not clear if AERAS’s claim of "breach of fiduciary duty” is a contract claim or a tort claim. The doctors do not seem to dispute on appeal that the claim is one upon which relief can be granted. If that claim is based in contract, § 6 — 3—2(a)(2) might be the proper venue provision. Regardless, inasmuch as the parties seem to agree that § 6-3-2(a)(3) is the appropriate provision, we will treat that provision as the proper law of the case.